# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MARLEM TINOCO RAMIREZ,

               Plaintiff,

    v.

KILOLO KIJAKAZI,

               Defendant.

CIVIL ACTION NO. 3:22-CV-00431

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Marlem Tinoco Ramirez ("Ramirez") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 13). For the following reasons, the Commissioner's decision shall be **AFFIRMED.**

## I. BACKGROUND AND PROCEDURAL HISTORY

On February 3, 2020, Ramirez protectively filed an application under Title II for disability insurance benefits, alleging disability beginning January 2, 2020. (Doc. 9-5, at 2). The Social Security Administration initially denied the application on August 31, 2020, and upon reconsideration on December 10, 2020, prompting Ramirez's request for a hearing, which Administrative Law Judge ("ALJ") Howard Kauffman held on April 6, 2021. (Doc. 9-2, at 38). In a written decision dated May 10, 2021, the ALJ determined that Ramirez "has not been under a disability, as defined in the Social Security Act, from March 15, 2020,

through the date of this decision," and, therefore, is not entitled to benefits under Title II. (Doc. 9-2, at 32). On March 17, 2022, the Appeals Council denied Ramirez's request for review. (Doc. 9-2, at 2).

On March 22, 2022, Ramirez commenced the instant action. (Doc. 1). The Commissioner responded on June 29, 2022, providing the requisite transcripts from Ramirez's disability proceedings. (Doc. 8; Doc. 9). The parties then filed their respective briefs, with Ramirez raising three bases for reversal or remand. (Doc. 12; Doc. 15).

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131. To establish an entitlement to disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

A.  ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B.  JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does

not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Ramirez is disabled, but whether the Commissioner's determination that Ramirez is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

## III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Ramirez "has not been under a disability, as defined in the Social Security Act, from March 15, 2020, through the date of this decision." (Doc. 9-2, at 32). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4). At the onset, the ALJ determined that Ramirez meets the insured status requirements of the Social Security Act through June 30, 2025. (Doc. 9-2, at 19).

A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Ramirez has not engaged in substantial gainful activity since March 15, 2020. (Doc. 9-2, at 19).

B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Ramirez had the following medically determinable severe impairments: rheumatoid arthritis, patellafemoral changes of the knees, obesity, depression, anxiety disorder, bipolar disorder, and attention-deficit/hyperactivity disorder ("ADHD"). (Doc. 9-2, at 19). The ALJ also found that the medical evidence of record established the existence of the following medically determinable non-severe impairments: pre-diabetes, hypothyroidism, Vitamin D deficiency,

acute cystitis, and flexor tenosynovitis of the right third finger. (Doc. 9-2, at 19-20).

C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Ramirez's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 9-2, at 20-21). The ALJ considered the following listings: 1.18 (Abnormality of a major joint(s) in any extremity), 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), 12.11 (Neurodevelopmental disorders), and 14.00 (Immune System Disorders). (Doc. 9-2, at 20-23).

D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so,

(2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Here, Ramirez alleged disability due to chronic joint pain, which causes the following symptoms: difficulty lifting, squatting, bending, standing, reaching, kneeling, sitting, climbing stairs, impaired memory, difficulty concentrating, difficulty getting along with others, fluctuation between depression and manic episodes, pain in her shoulders, left knee, ankles, and wrists even with the use of prescribed medication, and difficulty gripping and holding onto things. (Doc. 9-2, at 24-25). The ALJ found that while Ramirez's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Ramirez's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 9-2, at 25). After weighing and considering the evidence, the ALJ determined that Ramirez retained the RFC to perform "less than the full range of sedentary work" as defined in 20 C.F.R. § 404.1567(a), except that:

> [Ramirez] can lift and/or carry ten pounds occasionally and ten pounds frequently. She can sit six hours and stand and walk two hours each per eight-hour day. She is limited to occasional ramps and stairs, frequent balance, occasional stoop, kneel, crouch, and crawl, and occasional ladders, ropes, and scaffolds. She must have no concentrated exposure to vibration, unprotected heights, and moving machinery parts. She may perform simple, repetitive, routine tasks. She cannot work at a productive rate pace. She may have occasional interaction with the public, co-workers, and supervisors in a low stress job defined as few work place changes.

(Doc. 9-2, at 23).

E.  STEP FOUR

Having assessed a claimant's RFC, step four requires the ALJ to determine whether

- 7 -

the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ found that through the date last insured, Ramirez is unable to perform any past relevant work. (Doc. 9-2, at 31). The ALJ noted that Ramirez had past relevant work as a benefits clerk, appointment clerk, customer complaint clerk, and airport utility worker, but the requirements exceeded Ramirez's RFC. (Doc. 9-2, at 31). Thus, the ALJ proceeded to step five of the sequential analysis.

F. STEP FIVE

At step five of the sequential analysis process, the ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here,

- 8 -

the ALJ made vocational determinations that Ramirez was 41 years old on the alleged disability onset date, which is defined as a younger individual age 18-44. (Doc. 9-2, at 31). Considering Ramirez's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Ramirez can perform. (Doc. 9-2, at 32). In making this determination, the ALJ relief on the expertise of the vocational expert, who testified that Ramirez could perform the requirements of occupations such as (1) table worker, (2) final assembler, and (3) carding machine operator, which are occupations with open positions ranging from 14,000 to 29,000 nationally. (Doc. 9-2, at 32). Accordingly, the ALJ determined that Ramirez has not been under a disability during the relevant period and denied her application for benefits. (Doc. 9-2, at 32).

## IV.   DISCUSSION

On appeal, Ramirez advances three bases to argue that the decision of the ALJ is not supported by substantial evidence. (Doc. 12). First, Ramirez argues that the ALJ erred and abused his discretion by failing to consider the limitations of Ramirez's RFC from those impairments that the ALJ considered to be severe, including rheumatoid arthritis, patellafemoral changes in the knees, obesity, depression, anxiety disorder, bipolar disorder, and ADHD. (Doc. 12, at 13). Second, Ramirez argues the ALJ erred and abused his discretion in failing to consider the limitations from those conditions the ALJ did not consider to be severe, or even mention in his decision, including Ramirez's diagnosed and treated hypersomnia, bilateral shoulder pain, fatigue, and sleep disorder. (Doc. 12, at 21). Third, Ramirez argues the ALJ erred and abused his discretion in failing to afford proper weight to opinions and limitations from Ramirez's treating sources, including her rheumatologist, Francis Gallagher, M.D. ("Dr. Gallagher"), and her psychiatrist, David Prado, M.D. ("Dr.

Prado"), as compared to the opinions from the state agency consultants. (Doc. 12, at 23). In response, the Commissioner maintains that substantial evidence supports the ALJ's decision. (Doc. 15).

A. STEP TWO

Ramirez asserts that the ALJ's decision is not supported by substantial evidence because the ALJ found certain of his impairments "not severe" at step two of the five-step sequential evaluation process, despite compelling evidence to the contrary. (Doc. 12, at 22). Specifically, Ramirez contends:

> The [ALJ] erred and abused his discretion in failing to consider the effect of [Ramirez]'s other impairments, including hypersomnia, bilateral shoulder pain, fatigue, and sleep disorder. In fact, a review of the ALJ's decision reveals that the ALJ spent little time considering or discussing these disorders, and offers almost no limitation in particular regarding any of these impairments, certainly no limitations regarding issues with concentration/memory/focus, as well as no limitations regarding on–task behavior, despite treatment records evidencing ongoing issues from [Ramirez]'s hypersomnia, fatigue, and sleep disorder, all of which would have a direct impact on [Ramirez]'s ability to remain in task, focus, concentrate, need for unscheduled breaks and absenteeism, particularly in light of [Ramirez] being let go from her last job due to being unable to get out of bed and then calling off work as a result of her severe depression. (See medical records cited previously herein). Further, the ALJ included insufficient limitations regarding [Ramirez]'s ability lift and carry, despite being impacted by [Ramirez]'s bilateral shoulder pain.
>
> The ALJ should have considered the above conditions to be severe, as they have more than a slight impact upon [Ramirez]'s ADLs, and as a result, the ALJ should have still considered the limitations related thereto in setting forth [Ramirez]'s RFC.

(Doc. 12, at 22-23).

In response, the Commissioner argues that the RFC assessment limiting Ramirez to perform a range of low stress, unskilled work accounts for Ramirez's allegations of difficulty sleeping. (Doc. 15, at 22). Specifically, the Commissioner contends:

[Ramirez] insists that the ALJ erred by not finding bilateral shoulder pain to be an impairment at step two and then failing to consider it in formulating the RFC (Pl.'s Br. at 21). Pain, however, is not an impairment. It is a symptom produced by a medically-determinable impairment. *See* 20 C.F.R. § 404.1529(b). Here, the ALJ found that [Ramirez] had several severe physical impairments, including rheumatoid arthritis (Tr. 18), and considered [Ramirez]'s alleged resulting shoulder pain (Tr. 23, "Regarding her rheumatoid arthritis, she experiences pain in her shoulders"). The ALJ simply found that [Ramirez] still retained the ability to perform a range of sedentary work. *C.f., Lapinski v. Colvin*, No. 3:12-CV-02324-GBC, 2014 WL 4793938, at *19 (M.D. Pa. Sept. 24, 2014) ("'An individual does not have to be pain-free in order to be found 'not disabled,' particularly when the work at issue is at a lower exertional level") (collecting cases).

[T]hroughout her brief [Ramirez] contends that the ALJ failed to consider all of the evidence, including certain evidence that allegedly supports additional physical limitations in the RFC. The ALJ, however, stated he rendered his findings after consideration of the entire record (Tr. 18), and we should take him at his word. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("the Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("When an ALJ indicates [he] has considered all the evidence[,] our practice is to take the ALJ at [his] word."); *Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008) ("we take the ALJ at his word"); *c.f. Bryson v. Comm'r of Soc. Sec.*, 639 F. App'x 784, 786 (3d Cir. 2016) (emphasizing that "an ALJ need not discuss every relevant treatment note"). Also, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). Substantial evidence supports the ALJ's physical RFC finding. Plaintiff's contention fails.

An important point remains. The ALJ did not find [Ramirez] could perform all levels of exertional work. Instead, the ALJ limited [Ramirez] to sedentary work (Tr. 22, 31). This is the lowest level of physical exertion for jobs. *See Zirnsak v. Colvin*, 777 F.3d 607, 619 (3d Cir. 2014) ("Sedentary work requires the lowest level of physical exertion).

(Doc. 15, at 15-17).

Furthermore, the ALJ argues:

[Ramirez] complains  that the ALJ did not find that she had a sleep-related impairment (hypersomnia, fatigue, or a sleep disorder) at step two and in formulating the RFC (Pl.'s Br. at 22). [Ramirez], however, does not point to a

- 11 -

diagnosis of any such impairment in the record. To the contrary, in August 2020, [Ramirez] reported sleeping well (Tr. 570) and in January 2021, she stated she was low energy and sleeping more though she was able to complete her activities of daily living (Tr. 667). Moreover, when evaluating [Ramirez]'s RFC, the ALJ considered [Ramirez]'s allegations of difficulty sleeping (Tr. 23, 26), but nonetheless found that she retained the ability to perform a range of low stress unskilled work for the reasons stated above.

(Doc. 15, at 22).

At step two, a claimant bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry is merely "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he analysis at step two is wholly independent of the analysis at later steps . . . . [N]ot finding certain impairments severe at step two does not affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F.Supp.3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter that remainder of the five-step process, much less the overall outcome."); *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some other impairments were nonsevere, any error was harmless.").

Here, at step two, the ALJ found that Ramirez had several severe impairments including: rheumatoid arthritis, patellafemoral changes of the knees, obesity, depression, anxiety disorder, bipolar disorder, and ADHD. (Doc. 9-2, at 19). The ALJ also concluded that Ramirez's medically determinable impairments of pre-diabetes, hypothyroidism,

- 12 -

Vitamin D deficiency, and acute cystitis are non-severe impairments. (Doc. 9-2, at 20). In making this determination, the ALJ found that Ramirez's medical records did not indicate that she experiences ongoing symptomatology related to any of these impairments, that she did not allege that she experiences any persistent symptoms related to these impairments during her testimony, and that the entirety of Ramirez's medical records does not establish that she was persistently assessed with abnormal clinical examination findings that were attributed to any of these impairments by an acceptable medical source. (Doc. 9-2, at 19-20). In addition, the ALJ concluded that Ramirez's impairment of flexor tenosynovitis of the right third finger is a non-severe impairment. (Doc. 9-2, at 20). The ALJ noted that while Ramirez alleged experiencing pain daily in the finger during her testimony, the medical records do not indicate that she reported experiencing any ongoing symptomatology that was attributed to this impairment by an acceptable medical source and Ramirez was, in fact, noted to have intact finger dexterity and to be able to zip, button, and tie by a consultative physician who evaluated the claimant during July 2020. (Doc. 9-2, at 20).

The Court is not persuaded by Ramirez's argument that the ALJ failed to account for additional limitations caused by her alleged impairments of hypersomnia, bilateral shoulder pain, fatigue, and sleep disorder. First, the ALJ found in Ramirez's favor at step two, finding that she had several other severe impairments, and then proceeded on to step three of the five-step sequential evaluation process. (Doc. 9-2, at 19-20). Thus, any error with respect to evaluation of the severity of any other alleged impairments at step two was harmless and provides "no valid basis for remand." *See Orr*, 805 F. App'x at 88. Next, Ramirez has not cited any evidence that suggests these impairments cause any degree of limitation beyond what is already accounted for in the hypothetical question posed to the vocational expert. Contrary

to Ramirez's argument, neither bilateral shoulder pain nor sleeping disorders were alleged as impairments in this case. Although treatment records suggest Ramirez experienced sleeping difficulties as a symptom of her mental impairments, it was never alleged as a standalone impairment. (Doc. 9-3, at 22) (alleged impairments of bipolar disorder, depression, and rheumatoid arthritis). As noted by the Commissioner, pain is a symptom produced by a medically-determinable impairment. (Doc. 15, at 15-16); *see* 20 C.F.R. § 404.1529(b). Ramirez points to medical records that note her subjective complaints of difficulty sleeping and shoulder pain, however, she does not identify or proofer any objective medical evidence or medical opinions of record that list hypersomnia, bilateral shoulder pain, fatigue, or sleep disorders as a diagnosis and the ALJ did not identify such limitations as impairments. Indeed, the ALJ found that Ramirez had several severe physical impairments, including rheumatoid arthritis, considered her alleged resulting shoulder pain, and concluded that Ramirez still retained the ability to perform a range of sedentary work. (Doc. 9-2, at 18, 23). In sum, the Court is not persuaded that the ALJ failed to address symptoms related to these alleged impairments because the sleeping difficulties were addressed as a symptom of Ramirez's mental impairments and Ramirez has not shown that the shoulder pain was alleged by Ramirez or diagnosed by a medical source. *See Hess v. Kijakazi*, No. 4:20-CV-2429, 2022 WL 4120262, at *21 (M.D. Pa. Sept. 9, 2022).

Accordingly, this allegation of error fails.

B. Substantial evidence supports the ALJ's RFC determination.

Ramirez contends that the ALJ's RFC is not supported by the evidence of record because the ALJ should have found her RFC to be more limited. (Doc. 12, at 13). Ramirez claims the ALJ erroneously failed to adopt the opinion of Rose O'Brien, N.P. ("N.P.

O'Brien"), whom opined that Ramirez could only occasionally use her hands, and erroneously failed to afford proper weight to the opinions from her treating sources, Dr. Gallagher and Dr. Prado, as compared to the opinions from the state agency consultants. (Doc. 12, at 15-18, 23). Ramirez further argues that the ALJ erred by discounting her use of a walker due to not having a prescription and failing to consider her bilateral shoulder pain in formulating the RFC. (Doc. 12, at 15-21). Throughout her brief, Ramirez contends that the ALJ failed to consider all of the evidence, including certain evidence that allegedly supports additional limitations in the RFC. (Doc. 12). In opposition, the Commissioner asserts that substantial evidence, including Ramirez's x-rays, physical findings at the consultative and other examinations, and findings by Lelwellyn Raymundo, M.D. ("Dr. Raymundo"), supports the ALJ's physical RFC determination. (Doc. 15, at 13).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). " '[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).' " *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made

- 15 -

this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). In making the RFC determination, "the ALJ must consider all evidence before him." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence.... The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").

Here, the ALJ adequately considered Ramirez's medically determinable limitations in her RFC determination, explaining:

> the evidence of record indicates [Ramirez]'s allegations regarding her symptoms and limitations pertaining to her impairments are not entirely consistent with the objective evidence of record. However, the Court has accommodated some degree of [Ramirez]'s symptoms and limitations related to her severe physical impairments in her residual functional capacity by

- 16 -

limiting her to a range of work at the sedentary exertional level that includes postural and environmental limitations. Furthermore, to accommodate some degree of [Ramirez]'s symptoms related to her mental impairments the undersigned has limited [Ramirez] to work that entails simple repetitive, routine tasks, no work at a production rate pace occasional interaction with the public, co-workers, and supervisors, and low stress jobs defined as few work place changes.

(Doc. 9-2, at 31).

First, the ALJ considered Ramirez's subjective complaints, including chronic joint pain, which causes the following symptoms: difficulty lifting, squatting, bending, standing, reaching, kneeling, sitting, climbing stairs, impaired memory, difficulty concentrating, difficulty getting along with others, mood swings, pain in her shoulders, left knee, ankles, and wrists even with the use of prescribed medication, and difficulty gripping and holding onto things. (Doc. 9-2, at 24-25). The ALJ concluded that while Ramirez's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Doc. 9-2, at 25).

Next, the ALJ considered the objective medical record. (Doc. 9-2, at 25). Regarding physical limitations, the ALJ noted that Ramirez alleges experiencing symptoms of pain throughout the joints of her body; laboratory testing indicated findings consistent with rheumatoid arthritis and obesity; and Ramirez was assessed with clinical examination finding of crepitus of the knees, 4/5 strength of the upper extremities and lower extremities, tenosynovitis of the third digit of the right hand, limited range of motion of the shoulders, tenderness of the shoulders, elbows, knees, ankles, wrists, hands, and second and third fingers of the hands. (Doc. 9-2, at 25). However, the ALJ found that Ramirez's medical records also contain notable evidence that is not consistent with her allegations regarding the symptoms

and limitations pertaining to her severe physical impairments. (Doc. 9-2, at 26). Specifically, the ALJ cites to medical records indicating normal clinical examination findings, x-rays of Ramirez's hands, feet, and ankles that did not indicate any osteophytes or erosions, and medical records indicating that medication helps her fatigue and that Ramirez denied experiencing fatigue. (Doc. 9-2, at 26). In addition, the ALJ noted that the medical records do not indicate that any acceptable medical source prescribed Ramirez an assistive ambulatory device and a consultative physician who evaluated Ramirez noted that she did not utilize any assistive ambulatory device.[2] (Doc. 9-2, at 26); *see* SSR 96-9p, 1996 WL 374185, at *7 ("to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."). In sum, the ALJ acknowledged that while Ramirez's medical records indicate that she received treatment for

---

[2] The ALJ erroneously stated that Ramirez "has alleged needed to use a walker," citing to her testimony at the administrative hearing. (Doc. 9-2, at 26). Indeed, the following exchange occurred at the administrative hearing:

> Q: Okay, all right. Do you, do you use any kind of assistive devices, any braces on your joints or any, do you use any kind of cane, crutches, walker, or anything? Any type of device at all?

> A: Well, I have a knee brace and when I'm in so much pain I have a wrist brace.

> (Doc. 9-2, at 56-57).

Although the ALJ misquoted Ramirez's testimony, the Court finds that the erroneous reference is harmless and substantial evidence supports the ALJ's adverse finding. *See Williams v. Barnhart*, 87 F. App'x 240, 243-44 (3d Cir. 2004) ("Considering cumulatively the inconsistencies and the other relevant record evidence, we conclude that substantial evidence supports the ALJ's adverse credibility finding."); *Napoli v. Colvin*, No. 3:13–CV–01815, 2014 WL 2808603, at *11 at n.23 (M.D. Pa. June 20, 2014) (finding harmless error under the totality of the evidence).

her symptoms related to her rheumatoid arthritis, including the use of prescribed pain medication and the use of knee and wrist braced, the above-mentioned medical evidence "indicates [Ramirez] does not experience symptoms related to her rheumatoid arthritis with the frequency, intensity, or persistence that she has alleged." (Doc. 9-2, at 26).

As to Ramirez's mental impairments, the ALJ noted that she has allegedly been experiencing symptoms of low motivation, low energy, mood swings, crying spells, depressive and manic episodes, feelings of hopelessness and helplessness, flashbacks, nightmares, irritability, excessive worry, racing thoughts, panic attacks, difficulty concentrating, and feeling overwhelmed, panicky, and overloaded. (Doc. 9-2, at 26). In addition, the ALJ noted that her medical records indicate that Ramirez was assessed with clinical examination findings of an anxious, dysphoric, and tearful affect, insight, judgment, and attention, and mildly impaired recent and remote memory skills. (Doc. 9-2, at 26). However, the ALJ found that Ramirez's medical records nevertheless contain notable evidence that is not consistent with her allegations pertaining to her mental impairments. (Doc. 9-2, at 26). Specifically, the ALJ cites to medical record indicating that she was addressed with clinical examination findings of intact attention and concentration, good to average cognitive functioning, and fair insight and judgment. (Doc. 9-2, at 26). In addition, the ALJ noted that her medical records contain notations that are not consistent with her mental impairment allegations, referencing treatment records from April 2020, August 2020, September 2020, January 2021, and March 2021, which indicate that Ramirez "has not required any emergent treatment for symptoms related to her mental impairments and has not required any inpatient mental health therapy treatment since her amended alleged onset date of disability." (Doc. 9-2, at 27). In sum, the ALJ found that while Ramirez's medical

records indicate that she did receive mental health therapy treatment and utilize prescribed psychotropic medications for her symptoms related to her mental impairments, the above-mentioned evidence indicates that Ramirez "does not experience symptoms related to her mental impairments with the frequency, intensity, and persistence that she has alleged." (Doc. 9-2, at 27).

The ALJ also considered Ramirez's activities of daily living, including her assertions that she cannot make meals and that she relied upon her mother to assist with chores or do chores for her. (Doc. 9-2, at 27). However, the ALJ found that "the entirety of [Ramirez]'s medical records on a longitudinal basis, including the documented normal documented clinical examination findings pertaining to her physical and mental impairments, is not consistent with [Ramirez] experiencing limitations in her activities of daily living to the extent she has alleged." (Doc. 9-2, at 27).

In addition, the ALJ addressed Ramirez's testimony that she experiences medication side effects of nausea, sleepiness/drowsiness, and diarrhea. (Doc. 9-2, at 27). The ALJ found that "the entirety of [Ramirez]'s medical records do not indicate she persistently reported experiencing such medication side effects," and "despite her purported medication side effects of diarrhea and nausea, [Ramirez]'s medical records neither indicate that she has experienced ongoing weight loss or that she was persistently assessed with any abnormal clinical examination findings pertaining to her gastrointestinal tract." (Doc. 9-2, at 27). Furthermore, the ALJ noted, "despite her alleged medication side effect of drowsiness, [Ramirez]'s medical records indicated, as noted above, that she was assessed with clinical examination findings of intact cognitive function, clear sensorium, a coherent thought process, and intact attention and concentration." (Doc. 9-2, at 27). In sum, the ALJ concluded that Ramirez does not

experience any medication side effects to such an extent that they would preclude her from performing jobs consistent with the RFC determination. (Doc. 9-2, at 27).

Next, the ALJ considered the medical opinions and prior administrative medical findings of record, noting that he "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." (Doc. 9-2, at 28). Specifically, the ALJ reviewed the medical opinions provided by state agency medical consultants, Ruth Meyers Arnold, D.O. ("Dr. Arnold"), and Dr. Raymundo; state agency psychological consultants, Edward A. Jonas, Ph.D. ("Dr. Jonas"), and Richard W. Williams, Ph.D. ("Dr. Williams"); Arlene Broska, Ph.D. ("Dr. Broska"); N.P. O'Brien; Dr. Gallagher; and Dr. Prado. (Doc. 9-2, at 28-31). The ALJ stated:

> A State agency medical consultant completed an opinions that indicates the claimant can occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk (with normal breaks) for a total of two hours in an eight hour work day; sit (with normal breaks) for a total of about six hours in an eight hour work day; occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to vibration and hazards (Exhibits B2A). The State agency medical consultant provided explanatory comments to support the opinion. Additionally, the opinion of the State agency medical consultant is generally consistent with the claimant's medical records on a longitudinal basis, including clinical examination findings of a normal gait, a normal stance, no evident joint deformity, stable joints, no muscle atrophy of the extremities, 5/5 strength in all extremities, 5/5 grip strength bilaterally, and intact range of motion of all peripheral joints. However, that aspect of the State agency medical consultant's opinion regarding standing and walking is not consistent with documented clinical examination findings of 5/5 strength in the lower extremities and a normal gait. Thus, the undersigned generally finds the opinion of the State agency medical consultant persuasive while also noting that the aspect[ ] of the opinion regarding the standing and walking limitations are not persuasive.
>
> A State agency medical consultant completed an opinion that indicates the claimant can occasionally lift and/or carry ten pounds; frequently lift and/or

carry ten pounds; stand and/or walk (with normal breaks) for a total of two hours in an eight hour work day; sit (with normal breaks) for a total of about six hours in an eight hour work day; occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to vibration and hazards (Exhibits B4A). The State agency medical consultant provided explanatory comments to support the opinion. Additionally, the opinion of the State agency medical consultant is generally consistent with the claimant's medical records on a longitudinal basis, including clinical examination findings of a normal gait, a normal stance, no evident joint deformity, stable joints, no muscle atrophy of the extremities, 5/5 strength in all extremities, 5/5 grip strength bilaterally, and intact range of motion of all peripheral joints. However, that aspect of the State agency medical consultant's opinion regarding standing and walking is not consistent with documented clinical examination findings of 5/5 strength in the lower extremities and a normal gait. Thus, the undersigned generally finds the opinion of the State agency medical consultant persuasive while also noting that the aspects of the opinion regarding the standing and walking limitations are not persuasive.

State agency psychological consultants completed opinions that indicate the claimant has some moderate limitations pertaining to sustained concentration and persistence, understanding and memory, adaptation, and social interaction. The State agency psychological consultant also completed a psychiatric review technique that indicates the claimant has an overall moderate degree of limitation regarding understanding, remembering, or applying information, interacting with others, concentration, persistence, or pace, and adapting or managing oneself and an (Exhibits B2A and B4A). The State agency psychological consultants provided explanatory comments to support the opinions. Additionally, the opinions of the State agency psychological consultants are consistent with the claimant's medical records on a longitudinal basis, including clinical examination findings of normal speech, an grossly intact memory, intact cognitive function, clear sensorium, a full range of affect, an intact memory, age appropriate language, a coherent thought process, intact attention and concentration, fair to good cognition, good eye contact, and a grossly intact long-term memory. Accordingly, the undersigned finds the opinions of the State agency psychological consultants persuasive.

Arlene Broska, Ph.D. completed an opinion that indicates the claimant has no limitation regarding understanding remembering, and carrying out simple instructions and making judgment on simple work related decisions; mild limitations regarding understanding remembering, and carrying out complex instructions and making judgments on complex work related decisions; and moderate limitations regarding interacting appropriately with the public, supervisors, and coworkers and responding appropriately to usual work situations and to changes in a routine work setting (Exhibit B6F). Dr. Broska's

opinion is somewhat supported by her evaluation of the claimant during which she assessed the claimant with abnormal clinical examination findings pertaining to insight, judgment, and memory. Additionally, those aspects of the opinion pertaining to interacting with others are consistent with the claimant's medical records on a longitudinal basis, including clinical examination findings of a full range of affect and clinical notations indicating the claimant was cooperative. However, the aspects of the opinion pertaining to understanding, remembering, and carrying out instructions, are not entirely consistent with documented symptoms of crying spells, panic attacks, and difficulty concentrating and a documented clinical examination finding of fair attention. Thus, the undersigned finds Dr. Broska's opinion only partially persuasive.

Rose O'Brien, NP, completed an opinion that indicates the claimant can frequently lift and carry up to ten pounds; occasionally lift and carry eleven to twenty pounds; frequently lift and carry up to twenty pounds; sit for three hours at one time without interruption; stand for two hours at one time without interruption; walk for one hour at one time without interruption; stand for four hours during an eight hour work day; sit for six hours during an eight hour work day; walk for two hours during an eight hour work day; frequently reach (overhead/all other directions) and push/pull with the upper extremities; occasionally handle, finger, and feel with the upper extremities; frequently operate foot controls bilaterally; occasionally climb stairs and ramps; never climb ladders or scaffolds; occasionally balance; frequently stoop, kneel, crouch, and crawl; can never tolerate exposure to unprotected heights; tolerate occasional exposure to moving mechanical parts and operation of a motor vehicle; tolerate continuous exposure to dust, odors, fumes, pulmonary irritants; tolerate frequent exposure to extreme heat and vibrations; and tolerate occasional exposure to extreme cold; and tolerate very loud noise (Exhibit B4F). Ms. O'Brien's opinion is somewhat supported by her evaluation of the claimant during which she assessed the claimant with clinical examination findings of 4/5 strength of the upper extremities and lower extremities and tenderness of the shoulders, elbows, knees (patellofemoral area), ankles, wrists, hands, and second and third digits of the right hand. However, the entirety of the opinion is not consistent with her own clinical examination findings of 4/5 strength of the upper extremities and lower extremities. Moreover, the manipulative limitations denoted by Ms. O'Brien are not consistent with her own finding of intact hand and finger dexterity. Thus, the undersigned does not find Ms. O'Brien's opinion persuasive.

Francis Gallagher, M.D., completed an opinion on March 18, 2021 that indicates the claimant frequently experience symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks; the claimant's impairments are likely to produce good days and bad days; the claimant's impairments affect her ability to use her hands; the claimant would miss work on a regular basis such that she would miss work more than

- 23 -

one day a month (Exhibit B12F). Dr. Gallagher referenced the claimant's symptoms of joint pain and joint stiffness and abnormal laboratory testing and clinical examination findings to support the opinion. However, Dr. Gallagher's opinion is not consistent with documented clinical examination findings of a normal gait, a normal stance, no evident joint deformity, no muscle atrophy of the extremities, 5/5 strength in all extremities, intact hand and finger dexterity, normal range of motion of the shoulders, elbows, wrists, hips, lumbar spine, cervical spine, ankles and joints of the hands, stab le joints, and intact range of motion of all peripheral joints; documented clinical examination findings of intact cognitive function, clear sensorium, a coherent thought process, intact attention and concentration, fair to good cognition; and the lack of any inpatient mental health therapy treatment. Thus, the undersigned does not find Dr. Gallagher's opinion persuasive.

David Prado, M.D., completed a mental residual functional capacity assessment form that indicates the claimant has moderate and marked limitations pertaining to understanding, remembering, and applying information; marked and extreme limitations pertaining to interacting with others; marked and extreme limitations pertaining to sustained concentration, persistence, or pace; and marked and extreme limitations pertaining to adapting or managing oneself; the claimant's impairment would substantially interfere with her ability to work on a regular and sustained basis at least twenty percent of the time;; the claimant would miss work five days a month due to her mental impairment or related treatment; and the claimant cannot work on a regular and sustained basis due to her mental impairment (Exhibit B13F). Dr. Prado referenced the claimant's mental impairments and noted the claimant's history of inpatient mental health therapy treatment, outpatient mental health therapy treatment, and the use of medication to support his opinion. However, Dr. Prado's opinion is not consistent with documented clinical examination findings of normal speech, an grossly intact memory, intact cognitive function, clear sensorium, a full range of affect, an intact memory, age appropriate language, a coherent thought process, intact attention and concentration, fair to good cognition, good eye contact, and a grossly intact long-term memory and the claimant's lack of any inpatient mental health therapy treatment since her amended alleged onset date of disability. Furthermore, Dr. Prado's opinion is not consistent with clinical notations indicating the claimant denied experiencing depressive and manic episodes; the claimant's anxiety is well controlled; the claimant reported she has been "pretty good" in general; the claimant reported that her mood is more stable, she has not had any significant crying spells, and her appetite is stable; the claimant denied experiencing hopelessness and worthlessness; the claimant reported her depression is manageable; and the claimant was noted to have mild anxiety, mild depression, mild distractibility, and mild inattention. Accordingly, the undersigned does not find Dr. Prado's opinion persuasive.

(Doc. 9-2, at 28-31).

The Court finds that the ALJ's evaluation of the medical opinions comported with the new regulatory scheme and is supported by substantial evidence. (Doc. 9-2, at 28-31). As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96-5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the

- 25 -

same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

"Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching 'opinion' evidence in order to fashion a claimant's RFC." *Myers v. Berryhill*, 373 F. Supp. 3d 528, 538 (M.D. Pa. 2019). "[T]he ALJ is responsible for making an RFC determination . . . and he is not required to seek a separate expert medical opinion." *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003); *see Butler v. Colvin*, 3:15-CV-1923, 2016 WL 2756268, at *13 n.6 (M.D. Pa. May 12, 2016) (rejecting the argument that a medical opinion is required to craft an RFC). "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). An ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the

decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). The ALJ is expressly not required to "seek outside expert assistance." *Chandler*, 667 F.3d at 362 (citing 20 C.F.R. §§ 404.1546(c), 404.1527(d), and SSR 96-5p).

First, Ramirez argues that the ALJ failed to adequately explain why he did not adopt the limitations from N.P. O'Brien, as it relates to Ramirez only being able to use her hands occasionally for fingering, handling and feeling. (Doc. 12, at 15). Ramirez contends the ALJ should have afforded greater weight to the opinion of N.P. O'Brien because it is based upon an actual examination of Ramirez and her physical capabilities. (Doc. 12, at 28). The Court finds that the ALJ adequately explained why the opinion of N.P. O'Brien was not persuasive. The ALJ's decision must be "read as a whole," and the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 503. As noted *supra*, the ALJ noted that while the opinion was "somewhat supported" by N.P. O'Brien's evaluation of Ramirez, "the entirety of the opinion is not consistent with her own clinical finding." (Doc. 9-2, at 29-30); *see* 20 C.F.R. § 404.1520(c)(1) (explaining that an ALJ need not find an opinion persuasive where it is not well supported). Further, the ALJ explained that earlier in this decision that x-rays of Ramirez's hands, feet, and ankles did not indicate any osteophytes or erosions. (Doc. 9-2, at 26).

Next, Ramirez criticizes the ALJ for failing to adopt the opinions of Dr. Gallagher and Dr. Prado, while assigning persuasive weight to the opinions of the state agency medical consultants, Dr. Arnold and Dr. Raymundo, and state agency psychological consultants, Dr. Jonas and Dr. Williams, despite the fact that the state agency consultants never examined Ramirez. (Doc. 12, at 23). Ramirez argues that "[a]s limitations opined by Dr. Gallagher and Dr. Prado were consistent with the record (when considered in combination with their

- 27 -

specialization in the areas of rheumatology and mental-health, respectively), the ALJ should have included the limitations noted above from each of these medical sources, both of whom based their limitations for [Ramirez] upon their own observations." (Doc. 12, at 28-29). The Court is not persuaded by Ramirez's argument that the ALJ's consideration and articulation of Dr. Gallagher and Dr. Prado's opinions fell short of what is required. Rather, the Court finds that the ALJ's evaluation comported with the Social Security Regulations because he adequately explained how he considered the "supportability" and "consistency" of Dr. Gallagher's and Dr. Prado's opinions. 20 C.F.R. § 404.1520c(b)(2).

To the extent that Ramirez challenges the ALJ's findings that the opinions of the state agency psychological consultants were persuasive even though the state agency consultants are not specialized in rheumatology or mental health, there is no requirement that a reviewing state agency medical consultant or a consultative examiner specialize in the specific condition for which the claimant is seeking a disability. Rather, specialization is one of several factors the ALJ may, but is not required to, discuss when evaluating the persuasiveness of an medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2) (The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate . . . ."); 20 C.F.R. § 404.1520c(c)(4) ("The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty . . . .").

Here, the Court finds that substantial evidence supports the ALJ's findings that Dr. Arnold's and Dr. Raymundo's opinions were "persuasive while also noting that the aspects of the opinion[s] regarding the standing and walking limitations are not persuasive." (Doc. 9-

- 28 -

2, at 28). The state agency medical consultants' opinions are supported by the longitudinal record, including that Ramirez was found to have normal gait, a normal stance, no evident joint deformity, stable joints, no muscle atrophy of the extremities, 5/5 strength in all extremities, 5/5 grip strength bilaterally, and intact range of motion of all peripheral joints. (Doc. 9-2, at 28). However, the ALJ noted that Dr. Arnold's and Dr. Raymundo's opinions regarding the standing and walking limitations was "not consistent with documented clinical examination findings of 5/5 strength in the lower extremities and normal gait." (Doc. 9-2, at 28). Moreover, the ALJ's determination was supported by activities of daily living that Ramirez was still capable of performing, including shopping in stores, paying bills, counting change, using a checkbook, reading, going to church, watching television, listening to music, and spending time with others. (Doc. 9-2, at 56-59). Nevertheless, the ALJ limited Ramirez to only sedentary work, which requires the lowest level of physical exertion. *See Zirnsak*, 777 F.3d at 619.

In addition, the Court finds that the ALJ's findings that Dr. Jonas' and Dr. Williams' opinions were persuasive are amply supported by the clinical and objective findings, including that Ramirez was found to have moderate limitations in mental functioning with normal speech, intact memory, intact cognitive function, intact attention and concentration, clear sensorium, a full range of affect, age appropriate language, coherent thought process, and good eye contact. (Doc. 9-3, at 22-35, 39-49). Nevertheless, to account for Ramirez's limitations in adapting and managing herself and sustaining concentration, persistence, and pace, the ALJ limited her to low stress work. (Doc. 9-2, at 23). Overall, the Court finds that the ALJ's assessment was supported by the record.

The ALJ adequately explained the legal and factual basis for his determination, and based his conclusions on substantial evidence after consideration of the entire record. It is the right and responsibility of the ALJ to make such assessments, and the Court finds that substantial evidence supports this determination. *See Bryson*, 639 F. App'x at 786 (emphasizing that "an ALJ need not discuss every relevant treatment note"); *Malloy*, 306 F. App'x at 764 ("The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision."). Ramirez's argument simply asks the Court to re-weigh the evidence, which this Court cannot do. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3rd Cir. 1992)). Because the Court cannot re-weigh the evidence, the Court finds that substantial evidence supports the ALJ's RFC determination.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's decision to deny Ramirez's application for benefits is **AFFIRMED**, final judgment is issued in favor of the Commissioner and against Ramirez, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: September 11, 2023           *s/ Karoline Mehalchick*
                                    **KAROLINE MEHALCHICK**
                                    **Chief United States Magistrate Judge**

- 30 -